Ms. Liz Riordan May it please the Court, for the Plaintiffs, I am Shannon Liz Riordan and I believe I've reserved three minutes of my time. Your Honors, I want to begin by emphasizing what the case before you today is not about. The case for you to decide is not about the ultimate question of whether cab drivers are employees under Illinois law that has been conceded for purposes of this appeal and it's also not before you to decide whether or not there is an implied contract that was alleged in the complaint because the lower court decided there was and that is also not challenged for purposes of this appeal. The sole issue before you is a novel issue of first impression and a very important issue of first impression under Illinois law, which is whether the Illinois Wage Payment and Collection Act should be construed so narrowly as the district court construed it. So as to limit its protection only to payments that are literally made directly from an employer to an employee. Now the district court... So now before you go on, so if we were to certify this question to the Illinois Supreme Court, what you just said, would that be the appropriate question to ask or how would we frame that? Yes, I believe just as we framed the question in our papers to you. It is the question about whether this statute limits its protection to those payments that are literally and directly made from the employer to the employee. So, to expand on it, something like, are tips and other forms of payment that flow directly from the customer to the employee to compensate an employee for their work for an employer, compensation owed by an employer under the Wage Act? Yes. Essentially, I mean, we're basically saying the same thing, but I... Yes, yes, that is the question and it is a novel question. If this court is not certain how the Illinois courts would answer that question, then certification would be appropriate. So I'd like to point out for you several of the key reasons why I believe the district court erred in this. First of all, the statute refers to, again, any compensation owed an employee by an employer. It does not say any compensation paid to an employee by an employer. And in their brief, the defendant points to the 1984 amendment to the act. And I just want to take a moment to explain what I think that amendment did. Prior to the 1984 amendment, the statute referred to wages as compensation for labor or services rendered. And it appears that what the legislature did in enacting that amendment was broadened the concept of wages beyond compensation for work actually performed because they intended it to cover such things as vacation pay or severance pay. In other words, when there may not have actually been labor performed. And just the way they worded it was to talk about compensation that is owed by the employer. But again, they didn't make the words as they could have paid by the employer. So now, an important point is, as you just mentioned, tips are recognized as wages under federal and state law. And tips, of course, are typically paid directly from the customer to an employee. Also, as we've noted in our briefing, the district court in this case just assumed that all of the payments to the cab drivers came directly from the employees. But in the circumstances of the use of credit cards and vouchers, that's actually not the case. The discovery would have revealed the customers pay by credit card, and then the cab drivers have to go to the cab companies to obtain their money from the credit card processing. But also, most importantly- Now, let me ask you something about that, though. Yes. The cases finding that tips are wages under Illinois law are primarily minimum wage cases, right? That is correct. And since the two statutes define wage differently, why should the court assume the minimum wage cases have any bearing on the definition of wage under the Illinois Act? Well, in the case law, this is a case of first impression under the IWPCA. So our argument is simply by implication, tips are recognized generally in state court, federal court, and across the country as a form of wages. It's the common way that many employees are compensated, restaurant workers, cab drivers, skycaps at the airport, valets, many types of employees. But importantly here, remember that because it's conceded for purposes of this appeal that the drivers are the employees of the companies, that means that the drivers are the agents of the companies. So when customers are paying the drivers, the drivers are collecting those payments on behalf of their employer, the companies, and it just so happens that under the contract that the drivers have with their employer, the drivers are to keep those tips and fares. But again, because for this appeal, the drivers are employees, it's not that the customers are paying these tips and fares to the drivers, they're paying it to the cab companies, and under the contract, the drivers get to keep them, and that's our argument. Does the company have any ability to control the hours or days that the drivers work? Well, again, it's not relevant for this appeal because they're conceded to be employees here. I mean, they do sign up for shifts, and they do have to work particular shifts that they're allotted. But again, the IWPCA has a very broad definition of who's an employee, broader than the Illinois Minimum Wage Law or the FLSA, so it's an important point. The reason that the plaintiffs brought this claim under the IWPCA is specifically because of its broader definition of who is an employee, and the recent case of Calinan versus the City of Chicago makes clear how difficult it is, actually, to prove employee status under those other laws, which is why we brought it under this law, and the question before you now is whether or not just simply the question of wages is to be construed so narrowly. I also want to point out... Counsel, what wages are owed pursuant to the contract and are not being paid? Well, the wages are the tips and fares that the drivers received, and our argument... Do they keep those? Well, no, they don't, because they have to pay kickbacks to the employer in the form of shift fees. So our argument is that they have not satisfied the requirements of the deductions provision. There are regulations regarding... But the shift fee is a lease to drive the cab. Well, if they're employees, then actually they're not. They're actually kickbacks or deductions. That's our argument, but again... Well, they're not being deducted from anything. They're just being paid as a consequence of the contract to drive the cab that is under the medallions that are owned by the cab companies. If we are correct that the tips and fares are the wages, then our allegation is not present at this appeal. It's not before you now, is that those are unlawful deductions because the cab companies did not satisfy the rules required for making deductions. Nothing is being deducted. Well, let me point to the case we cite in our brief of Sebago v. Boston Cab Dispatch. That was a similar case that was brought in Boston under the Massachusetts wage law, in which the Massachusetts Supreme Judicial Court ultimately held that cab drivers were not employees. Again, not before you here because it's conceded for this appeal that the drivers are employees. But the Massachusetts SJC agreed with this very argument that if the drivers are employees, then the shift fees they paid are unlawful deductions from wages because they're essentially payments made for a job. And in holding that, the SJC, the Massachusetts SJC, relied on a case cited in our briefing called AWUA v. Coverall North America, in which cleaning workers who were classified as franchisee independent contractors, but were ultimately held to be employees, had to pay for their jobs in the form of franchise fees. The SJC held in that case that those payments for a job violated the Massachusetts Wage Act, even though the Massachusetts Wage Act was even more explicit than the Illinois Wage Payment Collection Act in defining wages as, talking about wages in terms of every person having employees in his service shall pay weekly or biweekly each such employee the wages earned by him. So in other words, the Massachusetts law explicitly refers to payments made by an employer to an employee, yet the Massachusetts highest court held that payments for a job, such as payments cleaning workers had to pay to get their jobs, were illegal deductions from wages. And then the Massachusetts SJC in the Sebago case held that under that reasoning, payments made for shift fees by cab drivers would be illegal deductions from wages if they were employees. But in that case, found they weren't. Is there that the Illinois Supreme Court would follow a Massachusetts Intermediate Court of Appeals in construing the Illinois law? Well, it wasn't an Intermediate Court of Appeals. It was the highest court of Massachusetts, the Supreme Judicial Court. Now, because this is a case, the Sebago case, yes, we cite there was an intermediate decision, but there was also the SJC decision, which we cited from this year. So because this is an issue of first impression, as we've cited in our briefing, the Illinois courts will look to sister states interpreting similar statutes. And as I just explained, the Massachusetts statute is even more explicit in referring to payments made from employers to employees. And yet, in the Sebago case and the Awuah versus Coverall case, the SJC reached the conclusion that payments for a job are illegal deductions from wages. So I submit to you. The difficulty I have with your argument is that this seems to me to be an attempt to get around what the contract actually says by redefining the compensation scheme as wages. And so trying to present it as a question of statutory interpretation and whether the tips and considered wages, even though they come from the customers and not from the employers, as a means of obtaining some substantive relief that the cab drivers are not entitled to under this statute. This statute is just there to make sure that employees get paid pursuant to their employment contracts in a timely fashion. Yes, exactly. And it's not, it doesn't provide any substantive relief beyond what the contract provides. It's a timely payment statute and an anti-deduction, anti-improper deduction statute. But that doesn't give rise to any additional substantive rights that are not contained within the contract. And it seems like you're trying to rewrite the contract by way of this statute. Well, this case has not gotten to the point yet of addressing whether these would be illegal deductions. Our argument is that they have not satisfied the requirement for making deductions from wages. The point that's before the court now is simply the threshold issue of whether these tips and fares are their wages. And I submit that tips are wages. The drivers are accepting these payments on behalf of the companies because they're the agents, because they're the employees. Let me just ask you about the tips for a second. Assume we have a $10 fare and a $2 tip. And the credit card is rejected and the customer has to provide cash. And he only pays $10. Is the cab company responsible for the $2 fare that was not processed in this? I mean, I'm trying to wrap my mind around a situation where you have the company responsible for the remittance of the fare through the electronic process of the credit card. But the credit card doesn't work. So is there a trust developed on behalf of the cab company for the driver for the tip that didn't occur? Well, the tips and fares, as we've defined it, are the wages that the cab drivers receive or whatever tips and fares they manage to obtain. If they didn't manage to obtain it, it's not an issue in this case whether or not the cab companies may be liable for additional amounts that the customers didn't pay. That's not the issue that's here. But the point is that we're saying that whatever they do get, those are their wages. And then at a later stage in the case, we would attempt to show that the deductions requirements were not complied with. And I believe my time is up. I want to save my rebuttal if I may. Of course. Thank you. Thank you. Mr. Paul? Good morning. May it please the court. My name is Brian Paul and I represent the defendants in this matter. The lower court properly dismissed this case pursuant to Rule 12B6. Plaintiffs in this case are cab drivers who filed a two count complaint alleging a violation of the Illinois Wage Payment and as well as the defendants were unjustly enriched in violation of Illinois common law. Plaintiff's wage payment claim was properly dismissed because plaintiffs pled that they receive no wages. That is a direct quote from their complaint. Having pled that they receive no wages from defendants, they cannot pursue a claim under the Wage Payment Act. Their unjust enrichment claim was properly dismissed because it's based on the same improper conduct as the Wage Payment Act claim was. And it being based on the same improper conduct, when the wage payment claim was dismissed, the unjust enrichment claim also had to be dismissed. We ask that this court affirm that dismissal. With regard to the wage payment claim, in paragraph 25 of their complaint, plaintiffs plead specifically they received no wages. Based on that pleading, the lower court dismissed the case. They pled themselves out of court. The aptly named Wage Payment Act is not the Illinois minimum wage law. It is not the Fair Labor Standards Act. Rather, it is an act that regulates only when and how wages are paid, where there's an agreement, an employment agreement, providing for the payment of those wages. Because plaintiffs affirmatively pled that there was no agreement to pay wages, they cannot pursue a claim under the Wage Payment Act. The Wage Payment Act does not provide for minimum wage. The Wage Payment Act does not provide for overtime. Counsel stood before you and said that they, plaintiffs specifically did not pursue claims under the Illinois minimum wage law and the Fair Labor Standards Act because the drivers could not meet the definition of employee under those acts. But now they come before you asking to conflate the principles of the Illinois minimum wage law and the right to substantive wages under that act with the timing requirements of the Illinois Wage Payment Act. Those two laws should not be conflated. The Sebago case counsel relied on out of Massachusetts, it contains both of those laws in one act. So the minimum wage law is relied upon in the Sebago case, but not here, in this case, because we have two separate laws. Normally, that would be the end of my presentation and I would sit down. However, plaintiffs come before this court seeking to amend their pleading and not just to add a few ancillary facts, but to directly contradict their pleading from the lower court. They now seek, in contradiction of paragraph 25 of the complaint, to argue that cab fares and tips somehow constitute wages under the Wage Payment Act. That simply cannot be the case. The Wage Payment Act defines wages as compensation owed by an employer to an employee pursuant to an agreement or contract. What's the mechanism for paying the shift fees? Well, first, there's no allegation as to that mechanism in the complaint, but the shift fees is a lease, and that lease is paid by the drivers to get the right to drive a taxi cab. They lease it just like you would lease from Hertz or any other car rental agency. Well, I guess that doesn't answer my question. That tells me how the cab companies conceptualize it, but I don't know how it's paid mechanically. I understand your question. I apologize, Your Honor. The drivers pay the money directly to the cab companies. They can pay via cash, which happens they can pay via check if they'd like. So it's not deducted from the credit card receipts or anything like that? No. The lease payment is not deducted from any credit card receipt. The cab companies don't have the ability, obviously, to jump between the cab passenger and the cab driver. And before that fare and tip is paid to the driver to take some magic deduction out of that payment. Rather, those fares and tips are paid directly to the drivers. Including the credit card payments? Well, credit card payments, as with any credit card payment, have to be processed. And the drivers can choose where to process that payment. They certainly may use the cab companies to process that payment. The Chicago Municipal Ordinance has a fee that comes out for that credit card processing. Just like if you use a credit card company, I'm sure Your Honors have been in cabs where you can use Square or other items to process the credit card as well. So when they use the cab company's credit card account, how are those monies rebated to the drivers? Those fares and tips? Well, if credit card processing comes from the driver to the cab company, then the cab company pays that credit card amount to the cab drivers. Bi-weekly? Monthly? Normally, it's daily. When they come in on the day that they process it, they're paid on the same day. Are shift fees paid daily or on a longer basis? Well, shift fees is a misnomer. So leases and leases, the length of the lease is up to the driver. The driver can select the length of the lease that they choose. And it can be in terms of hours, days, weeks. So there is no I pay for this shift to work. Oh, I see. Okay. That the drivers, when they're leasing a cab, are allowed to choose what length of time they would like to lease that cab for. What's the average? I do not know what the average is, Your Honor. I mean, given how much money they're making, it's probably shorter durations that these fees are paid? Or is that not a fair assumption? I don't believe that to be a fair assumption. And certainly that we do leases in weekly periods frequently, but I can't tell you on an average what the time is that leases are done. Okay. And so when there are credit card payments rebated to the drivers from the companies that own the medallions from the city, what the plaintiffs are calling shift fees, what you're calling a lease payment, those are not withheld from those rebated fares and tips? Those are not withheld. The lease payments are not withheld in any way from those credit card payments or any other. And there's no contrary allegation in the complaint? There's no contrary allegation in the complaint. In fact, the complaint does not mention any deduction from wages. What the complaint and what you heard Plaintiff's Counsel argue was that the mere process of paying an expense related to employment should, as a public policy matter, be declared to be a deduction. However, the Illinois Administrative Code directly contradicts that. In Section 780, 840, and 850 of the Illinois Administrative Code interpreting the Illinois Wage Payment and Collection Act deduction requirements, the Administrative Code specifically recognizes that, in fact, employees can pay expenses related to equipment, related to training, related to uniforms. So the concept that merely charging an expense is an illegal deduction is directly contradicted by the Administrative Code. Here, there is no deduction taken from anything, right? The cab drivers pay. So one of the allegations in the complaint is that they have to pay for gas. Well, the defendants have nothing to do with that. They go to the gas station, they pay the gas attendant, and they drive off. There is no possible deduction there. But that's one of the expenses alleged by the plaintiffs in this case. Your position is that if you lease it for 24 hours, you don't drive, you still have to pay, right? That's exactly right. That's exactly right, Your Honor. In fact, you can lease the cab and go park it in your driveway because you like people seeing you have a cab parked in your driveway. There's no obligation to go drive. There's no obligation to collect fares or tips. It's not part of their business model. The business model is leasing cabs under the allegation in the complaint. And rates are controlled by the city? And rates are set by municipal ordinance. The defendants have no role in setting rates that may be charged by the cab drivers. And in fact, the cab drivers don't. It's set by municipal ordinance. How do your clients make money? By leasing cabs. My clients make money by leasing cabs or providing affiliated services with that. They do not make money off the fares and tips. Their business is not dependent upon individuals paying fares or tips. And the supply of these medallions is tightly controlled by the city as well? The supply of the medallions is tightly controlled by the city as well as the drivers. The drivers have to meet certain ordinate requirements to be able to drive, including getting a chauffeur's license and passing city tests for that. So this is not the only agreement at issue in this case between the defendants and the plaintiffs is a lease agreement. There is no aspect of that in which the defendants have agreed to pay wages. Except you've conceded the employer-employee relationship and the existence of a contract? We concede that there's the existence of a lease. And for the purpose of a motion to dismiss, we did not dispute the employee status, though we certainly dispute it as a principled matter, but not for this purpose. But it's not a contract to pay wages or compensation. It's a contract to lease a cab. That's exactly right, Your Honor. It is not a contract to pay wages, which they plead it's not a contract to pay wages, which is how we got to this point. And this is not a case of first impression. The Seventh Circuit, in fact, has dealt with the Illinois Wage Payment Collection Act and specifically said it only enforces an agreement between the parties. It's National Metalcraft as well as Stark VPPM. Two Seventh Circuit decisions interpreting the Illinois Wage Payment Collection Act and finding that all the act does is provide for the right to enforce an agreement for timely payment. Finally, I'd like to add that even if we considered cab fares and tips as wages, there's still no allegation in the complaint that they were not timely paid, right? The payment happened simultaneous with the end of the cab right. So even if you were to take into account that those are wages, their complaint still would be dismissed pursuant to Rule 12b-6 because there is no allegation that there was a failure to pay and there is no allegation that there was a deduction taken by the employer from the cab fares and tips. I do want to just briefly add that their attempt to amend before this court and directly contradict their pleading flies in the face of Seventh Circuit precedent, including Flying J.V. City of New Haven and Lavalaise V. Village of Melrose Park. They had the opportunity to amend at the lower court. This case was not initially dismissed with prejudice. It was dismissed without prejudice with leave to amend. Had they wanted to amend the complaint to add allegations that their wages constituted fares and tips and credit card payments, they could have done so. They did not. They specifically chose not to and instead appealed to this court even prior to the time that had exhausted for them to amend their complaint. Are your lease rates regulated by the city? The leases are regulated by the city as well, yes, Your Honor. So there's a cap? Is there a cap? I believe there is a cap under the municipal ordinance. Yes. Finally, I just want to address unjust enrichment for a moment. It was not one of their statements of the case. Appellate issues for this court to review, but it is raised in the briefs. Their unjust enrichment claim repeats and re-alleges the exact same conduct that forms the basis of the Wage Payment Act claim. The Seventh Circuit is, and clearly v. Phillips, held that where the same conduct forms the basis of the unjust enrichment claim, then the same conduct of another dismissed claim forms the basis of the unjust enrichment claim. The unjust enrichment claim also should be dismissed. Well, that might not be an accurate statement of Illinois law, and I think you may be reading, over-reading Cleary. Cleary didn't resolve the question about whether there is a freestanding substantive claim for unjust enrichment under Illinois law, because that may be ambiguous in the cases. I think the more important point here is that where the relationship of the parties is governed by contract, you can't have an unjust enrichment claim. That is also a valid point, Your Honor, and another reason for dismissal. Where it's governed by contract, you can't have an unjust enrichment claim. Your Honor is exactly right. I would also say that Cleary recognizes that ambiguity in Illinois law and still goes on to hold that while Illinois law may recognize a separate cause of action, when the unjust enrichment claim is the same improper conduct as a dismissed count, then the unjust enrichment claim also should be dismissed. Unless there's an independent basis for a finding of some sort of actionable wrong. And then they would need to plead some wrong other than the violation of the act, and all they've pled here is an alleged violation of the act. Or some circumstances that make the retention of the benefit unjust. Which... I mean, you don't absolutely need a fraud or a statutory violation to support an unjust enrichment claim, but you need some circumstances that suggest that the defendant's retention of the benefit is unjust. That... Well, that's at least an ambiguity under Illinois law. That's correct. I mean, that's the universal rule around the country. Yes. And if there's ambiguity in Illinois law, they'll clean it up eventually. But for purposes of this case, we need some basis for a finding of injustice. That's correct. If there was not the contract piece of this, because you can't have unjust enrichment based on a contract provision, then you would need some other allegation that would be... That would have an injustice to it. And here all they have is an allegation of improper violation of the Wage Payment Act. Thank you, Mr. Paul. Thank you.  Thank you, Your Honor. Is there just a couple of points that I want to clean up in response to that? First of all, some of your questions had to do with whether deductions, whether these payments are deductions. What happens is, as put in the complaint, the drivers pay these shift fees typically on a daily or a weekly basis, many of them daily, meaning they go into the cab office every day. They collect the money from the credit cards. They pay out cash for their shift fee. Now, going back to the Massachusetts cases that I talked about, the AWUA and the Sebago cases, the AWUA case in saying that cleaning workers who had to pay for their jobs, what the court based that on was, again, the Massachusetts statute, which was even more clear than the Illinois statute that it was talking about payments from employer to employee. But putting that aside, it cited a federal regulation, 29 CFR 531.35, which is the anti-kickback statute regulation, which says that payments that are made for the benefit of the employer as opposed to the benefit of the employee are illegal kickbacks, regardless of whether or not they're taken directly out of wages or whether they're paid, for instance, to a third party. Those are deductions. Is that regulation in the Massachusetts case a construction of the substantive requirements of the minimum wage laws, federal and state? Well, no. The Massachusetts court in AWUA cited it as a CF in interpreting its wage law, Massachusetts wage law, pointed by comparison. But the wage law has both the payment component and the minimum wage component, so both a substantive and a timely payment. Right. But the portion of the law that the court said that we would have prevailed on had the drivers been employees was the exact same as the IWPCA. It was the argument that the drivers were making payments out of their wages and their wages were the tips and the fares. Again, the SJC said we would have won on that had they been employees. So, again, the point is that this is an issue that's coming up around the country in wage and hour law, whether or not illegal deductions must be taken directly out of the payments made from the employer to the employee or if it includes these kickbacks. In other words, whenever employees have to make payments that are for the benefit of the employer and that this federal regulation that I just cited to the famous case applying that is the Arriaga case, which we cite in our brief, which was an 11th Circuit case where farm workers had to make payments for visas and travel expenses and the court held that to be a wage violation, even though it wasn't the employer taking it out of what it was paying them. It was they were payments that they had to make that were for the benefit of the employer. You asked a few questions about the municipal regulations. I just want to point out, of course, that state law would trump municipal law, again, like the Massachusetts courts recognized in the Sebago case. So the fact that this is a regulated industry and the city sets caps on the lease rates is not a defense here. And the basis for our argument, which isn't ripe yet, but we would make later in the case, should we prevail on this appeal, is that the reason why the companies have not correctly followed the deductions requirement of the IWPCA is because the regulations require that there be contemporaneous written consent every time there's a deduction made. And our allegation is that there is not that contemporaneous written consent, which is why we're claiming these are illegal deductions. And finally, a lot has been said about, by my brother, about what we pled in the complaint. We did say they're not paid wages, talking in the general traditional terms of there was no payment of hourly wages. However, they received tips and fares. The lower court understood that we were pleading that they were getting their pay, their wages, from tips and fares. But, and her reason for dismissing the case was not that we had not pled that. It was that she found under the IWPCA that those would not qualify as wages because they were not paid directly from the employer to the employee. The reason we didn't take her up on her offer to amend the complaint is because it appeared she was saying, well, if you think you have a claim under the minimum wage law, you can do that. But it would have been futile. Let me just ask one last question, unless my colleagues have another one. You mentioned the cases are coming around the country, and you spoke of the nurses and farm workers. Now, does that come about, those cases, factually, because they have opportunities presented because they're referred to a job? Is there like an employment agency situation? Is that the setting? Well, the point- I mean, what exactly does the employer do in those cases? I want to analogize it to ours. What happens in those cases? Well, in the farm worker case, for instance, the Arriaga case, the farm workers had to pay various fees in order to get the job. They had to pay for their visas. They had to pay for their travel expenses. And the court held those were payments for the benefit of the employer. Here- What did the employer do in that case? Is the employer some large farming operation? Yes. Yes. I see. OK. Yes. And in the case of the nurses, what's the setting there? Oh, I don't think I have referred to nurses' cases. But I mean, more generally speaking, like, for instance, there are cases being litigated regarding truck drivers who have been misclassified as employees. And there's a question that's being litigated about whether improper deductions is limited- That's what I want to get to. Yes. Are there over-the-road truckers who lease the equipment who are- there are cases surfacing like this one? Yes. And that are finding that the payments that they have to make for their leases are illegal and payments that they have to make that are- some of which are deducted directly from their pay, but also some of which they have to pay out-of-pocket, such as for the gas. That case law is in your briefing? Yes. Yes. We cited some of the cases. BVEX is a case here, actually, before this court right now, where the plaintiff's prevailed below on summary judgment. There are some others. There was a FedEx case. Flugel versus FedEx Ground was the other Illinois case, where the drivers were held to be employees. And their claims were for these types of illegal deductions and kickbacks that they had to make. And then I guess I just- If you could wrap it up now. OK, I'll just wrap it up. On the unjustified- No, no, I don't want to cut you off. You may make that final statement. OK, OK. Thank you. On the unjust enrichment claim, Your Honor is right that the Cleary case is not so clear cut that there's no freestanding unjust enrichment claim. I think the court pointed out that the Illinois Supreme Court has not completely made that clear yet, because it declined to certify that question. I would submit that in the alternative, the plaintiffs should be able to plead unjust enrichment. Because here, what this case is seeking to remedy are really quite horrific conditions in the Chicago cab industry, where people are working lengthy hours, 12-hour shifts, six or seven days a week, oftentimes barely, if not even breaking even, such that often they are paying to work. You could work a full shift as a cab driver and owe the company money and not have even made any money. What's the benefit conferred unjustly? It's these lease fees, or what you're calling shift fees? Yeah, yes, yes. And that's governed by contract. Typically for unjust enrichment, that's a substitute contract theory, right? Well, but again, the contract that we're claiming, the implied contract that the district court recognized, was the implied agreement that the drivers would receive, would get to keep the fares and the tips. Right, but that's a contract implied in fact. And unjust enrichment in this context would be an implied in law contract. And that is a stand-in equitable contract remedy when there is no implied in fact contract or an actual contract. Right, right. So it's an alternative theory. If there is no such contract, it's patently unfair and unjust for these companies to accept this money, knowing that people are, as a study we put in the complaint, pointed out, making less than $5 an hour and often losing money in the course of the workday. Why is that not a market matter? The medallion is worth x, the price floats on medallions. Price of a car is worth x, obviously depreciates over time. That's what's the contract for, right? You have this cab with this medallion to do what you will. Now, I understand your point that you think they charge too much for that. But are we to put a cap on what's the fair price for the rental of a cab for a week or a month or whatever? What's unjust about what you're suggesting? I understand the economics as you present it, that it's pretty hard to make a living as a cab driver. I have no idea. We don't have any stats on that. But isn't that your thesis, that this is just an industry that owns medallions and obviously cabs and charges too much for them? Is that the theory here? Well, no. The theory is, once again, because under the Illinois Wage Payment Collection Act, and as conceded for this appeal, they are employees. Again, just the question is whether or not these payments may be, later on down the road, we would seek to prove in this case that these payments are illegal kickbacks. The only question, the threshold question here now is, can we even get in the front door to try to make this argument? Or does the IWPCA limit wages so narrowly to only payments literally made directly from the employer to the employee? That's the question before you. Thank you. Thanks to all counsel. Thank you. The case is taken under advisement.